IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN POPPEN,

     Plaintiff,          No. 2:10-cv-0568-MCE-JFM (PC)

  vs.

LIONEL FOSTER, M.D., et al.,

     Defendants.        ORDER

_____/

     Plaintiff is a state prisoner proceeding through counsel with a civil rights action pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). Plaintiff claims that his rights under the Eighth Amendment were violated by deliberate indifference to his serious medical needs. This action is proceeding against six defendants named in plaintiff's original complaint, filed March 10, 2010.[1] This

/////

/////

---

[1] Four defendants have answered the complaint following the denial of their motion to dismiss. One remaining defendant, Lionel Foster, has not yet been served, and plaintiff has provided additional information for service on said defendant. By separate order, the United States Marshal will be directed to serve defendant Foster.

1

1  matter is before the court on the motion of defendant T. Kimura-Yip to dismiss pursuant to Fed.
2  R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.[2]

STANDARDS FOR A MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197 (2007), and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007).  However, "[s]pecific facts are not necessary; the statement [of facts] need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'"  Erickson, 551 U.S. 89, 127 S.Ct. at 2200 (quoting Bell Atlantic at 554, in turn quoting Conley v. Gibson, 355 U.S. 41, 47 (1957).

ALLEGATIONS OF PLAINTIFF'S COMPLAINT

Plaintiff's complaints contains the following allegations relevant to the instant motion.[3]

Plaintiff is a thirty year old man in the custody of the California Department of Corrections and Rehabilitation (CDCR).  At all times relevant to this action he was housed at Mule Creek State Prison (Mule Creek).  On May 3, 2008, plaintiff submitted a CDC form 7362

---

[2] Defendant Kimura-Yip's motion came on for hearing before the undersigned on November 18, 2010.  Ian M. Hunter, Esq. appeared as counsel for plaintiff.  Shanan L. Hewitt, Esq., counsel for defendants, appeared.

[3] Most of the allegations set forth in this section were also set forth in this court's September 7, 2010 findings and recommendations on the motion to dismiss filed by four other defendants in this action.  As they are relevant to the instant motion they are repeated herein.

medical request, stating that he had a painful enlarged right testicle and asking that his request be given priority.  On May 6, 2008, plaintiff was examined by an R.N., who "found 'R testicular swelling – R/O mass – Needs M.D. assessment today.'"  Complaint, filed March 10, 2010, at 5.  Instead of a doctor, plaintiff was seen by a physician's assistant, who noted that plaintiff was complaining of testicular pain and problems urinating.  The physician's assistant prescribed 800 mg motrin twice a day.  Plaintiff asked for stronger medication but was told that the physician's assistant was not licensed to prescribe stronger pain medication.

On May 16, 2008, plaintiff saw defendant Soltanian-Zadeh, a D.O.  Plaintiff requested examination by a specialist and stronger pain medication.  Dr. Soltanian-Zadeh refused the request.  On May 21, 2008, another physician submitted a physician's request for diagnostic procedures for plaintiff, for a principle diagnosis of orchitis and notes that plaintiff's right testicle was "[p]ainful, hard, hypuremic/hyperthermic."  Id. at 6.

By June 11, 2008, plaintiff still had not had the additional testing.  He submitted another medical request, noting that the problem was getting worse and requesting expedited treatment.  Plaintiff was seen by a nurse who noted that he was in "acute distress."  Id.  On June 20, 2008, plaintiff was treated as a medical emergency by security staff and taken in a wheelchair to the clinic, where the nurse noted that plaintiff's pain and swelling was "worse with no relief from motrin."  Id. at 7.  The nurse telephoned defendant Soltanian-Zadeh, who, without seeing plaintiff, diagnosed no change from the last exam, recommended the addition of Tylenol, and said he would see plaintiff in approximately two weeks.

Seventeen days later, plaintiff still had not been seen.  On July 17, 2008, plaintiff submitted another medical request.  On July 22, 2008, plaintiff was taken to the San Joaquin General Hospital for an ultrasound.  The findings were that plaintiff's right testicle "'is predominantly solid with multiple solid cystic structures scattered throughout the mass.  This most likely represents testicular neoplasm.'"  Id.  On July 29, 2008, plaintiff submitted an inmate appeal complaining that it had been nearly three months since he first reported the testicular

3

swelling, that it could be cancer, and that he did not know what was going on. He requested "'adequate medical treatment for this urgent problem.'" Id. at 8. About a month later, plaintiff received a response that he was scheduled for a follow up in the first week of September.

Plaintiff resubmitted his appeal on August 25, 2008, again requesting treatment. On August 24, 2008, plaintiff was taken to the central clinic, where a nurse telephoned defendant Soltanian-Zadeh and reported that plaintiff was in pain from the swollen right testicle. Dr. Soltanian-Zadeh prescribed naproxen and told them to set plaintiff up to return the next day. Defendant Soltanian-Zadeh also informed defendant Heatley that plaintiff's ultrasound results had come in and required "'[u]rgent CT and urology" as well as other tests. On August 26, 2008, defendant Soltanian-Zadeh submitted a request for an "urgent" urology consultation. On August 29, 2008, defendant Heatley approved the request for a consultation on October 16, 2008.

Plaintiff was not informed of this appointment. On September 9, 2008, he submitted another inmate appeal, asking to know if and when an appointment had been scheduled. On September 11, 2008, defendant McLean returned the appeal plaintiff had filed in August, stating that it was being returned because of "'No Adverse Affect.'" Id. at 9. Plaintiff resubmitted the appeal on the same day. On the same day, a CT found that plaintiff had a right testicular neoplasm. On October 16, 2008, the San Joaquin General Hospital Urology Clinic recommended surgery. On October 23, 2008, plaintiff underwent a right radical orchiectomy with placement of a prosthesis. He was returned to prison the same day.

On October 24, 2008, plaintiff reported that he was in a lot of pain and that vicodin was not helping. Defendant Soltanian-Zadeh ordered the vicodin continued. Plaintiff's bandages were not properly changed post-operatively. On October 28, 2008, plaintiff again requested better pain medication from defendant Soltanian-Zadeh, as well as "a lay-in and cell feed." Defendant Soltanian-Zadeh refused all of these requests. On November 5, 2008, plaintiff was seen at San Joaquin General Hospital, diagnosed with a right scrotal hematoma, referred to oncology, and prescribed vicodin and keflex, an antibiotic. Between November 6 and 17, 2008,

plaintiff repeatedly requested the antibiotics and bandage changes from nurses at Mule Creek. They refused. On November 22, 2008, he wrote another medical request staying that the hole in his scrotum appeared to be getting bigger and he was in a lot of pain. On November 30, 2008, plaintiff went to the clinic because the hole in his scrotum was growing and he was in a lot of pain. At around 10:00 p.m. that night, the prosthetic fell out. A few days later, plaintiff asked medical staff at Mule Creek to treat him. Defendant Soltanian-Zadeh told plaintiff "it was San Joaquin's problem." Id. at 13.

On October 3, 2008, plaintiff submitted his appeal to the second level of administrative review. On December 10, 2008, defendant Weinholdt responded that plaintiff's care at Mule Creek "'has been appropriate and timely.'" Id. On November 5, 2009, defendant Kimura-Yip responded to one of plaintiff's grievances at the third and final level of administrative review with the finding that plaintiff's request for adequate medical care for continuing groin pain was a "new issue" and would "not be addressed." Id. at 14.

## DEFENDANT'S MOTION

As noted above, plaintiff's claim against all defendants, including defendant Kimura-Yip, is that his rights under the Eighth Amendment were violated by defendants' deliberate indifference to his serious medical need for adequate diagnosis and treatment of his testicular neoplasm and the sequelae that followed surgery to remove his right testicle. In order to state a claim for relief under the Eighth Amendment, plaintiff must allege that he had a "serious medical need" and that defendant acted with "deliberate indifference" to that need. Estelle v. Gamble, 429 U.S. 97, 105 (1976). A medical need is serious if "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992) (quoting Estelle, 429 U.S. at 104). Deliberate indifference is proved by evidence that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and

5

he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Mere negligence is insufficient for Eighth Amendment liability. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Whether a defendant had requisite knowledge of a substantial risk is a question of fact and a fact finder may conclude that a defendant knew of a substantial risk based on the fact that the risk was obvious. Farmer, 511 U.S. at 842. While the obviousness of the risk is not conclusive, a defendant cannot escape liability if the evidence shows that the defendant merely refused to verify underlying facts or declined to confirm inferences that he strongly suspected to be true. Id. Deliberate indifference specifically to medical needs "may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003).

"Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted). However, delay in providing medical treatment to a prisoner does not constitute deliberate indifference unless the delay causes harm. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404 (9th Cir. 1985). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing McGuckin, at 1060).

Defendant Kimura-Yip seeks dismissal on the ground that the allegations against her all relate to the processing of plaintiff's inmate grievance, that plaintiff has no substantive right in an inmate grievance procedure, and that her response to plaintiff's grievance cannot form the basis for liability in this § 1983 action.

Plaintiff seeks to impose liability on defendant Kimura-Yip on the ground that her substantive response to his administrative appeal contributed to the delays in getting necessary care and the attendant pain and suffering he experienced. The sole allegation of the complaint

against defendant Kimura-Yip is that on November 5, 2009, she responded at the Director's Level of Review that plaintiff's request for adequate medical care for continuing groin pain, a request plaintiff alleges that he "clearly" made at the first level of administrative review, was "a new issue" and would "not be addressed." Complaint, filed March 10, 2010, at 13-14. Although it is not entirely clear when this request was made at the first level of administrative review, all of the allegations of inadequate medical care raised in the complaint are based on events that occurred in 2008. Defendant Kimura-Yip's response is dated November 5, 2009.

It is unclear from the allegations of the complaint whether by the time defendant Kimura-Yip received and responded to plaintiff's grievance plaintiff was still in need of ongoing medical treatment or, instead, whether plaintiff was simply pursuing his administrative grievance to the final level of administrative review in order to satisfy the administrative exhaustion requirements of 42 U.S.C. § 1997e(a) or for some other reason unrelated to an ongoing need for medical care.

> The distinction is important because an appeals coordinator does not cause or contribute to a completed constitutional violation that occurs in the past. See George v. Smith, 507 F.3d 605, 609-610 (7th Cir.2007) ("[a] guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not"). However, if there is an ongoing constitutional violation and the appeals coordinator had the authority and opportunity to prevent the ongoing violation, a plaintiff may be able to establish liability by alleging that the appeals coordinator knew about an impending violation and failed to prevent it. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989) (supervisory official liable under Section 1983 if he or she knew of a violation and failed to act to prevent it).

Herrera v. Hall, 2010 WL 2791586, slip op. at 4 (E.D.Cal. 2010). Good cause appearing, plaintiff will be given an opportunity to either file an amended complaint which clarifies the basis for his claim against defendant Kimura-Yip in accordance with this order, or to file a request for dismissal of said defendant.

/////

7

If plaintiff chooses to amend the complaint, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendant Kimura-Yip's September 27, 2010 motion to dismiss is granted in part;

2. Plaintiff's complaint is dismissed; and

3. Plaintiff is granted thirty days from the date of this order in which to file either an amended complaint clarifying the basis for his claim against defendant Kimura-Yip or a request for voluntary dismissal of said defendant.

DATED: November 30, 2010.

UNITED STATES MAGISTRATE JUDGE

12
popp0568.mtd2